### JAMES A. POTTER *vs.* FRANCIS O. IRISH.

Under the U. S. St. of 1850, *c.* 27, requiring every mortgage or conveyance of any vessel or part of a vessel to "be recorded in the office of the collector of customs where such vessel is registered or enrolled," the record must be made in the district of the last registry and enrolment, though not the home port of the vessel; and a mortgage not so recorded conveys no title as against an attaching creditor of the mortgagor, although his attachment is not made until after the mortgagee has taken possession for breach of condition of his mortgage.

ACTION OF TORT against a deputy of the sheriff of Suffolk, for the taking on mesne process of one fourth part of the Barque O. J. Chaffee, as the property of N. G. Bourne.

At the trial in the superior court of Suffolk at January term 1857, before *Nash*, J., there was evidence of these facts: The

barque was built at Camden in 1849, and enrolled for the coasting trade on the 22d of November 1849 in the office of the collector of customs of the Belfast District, in which Camden is situated, and described in her enrolment as of Camden, and has ever since borne Camden on her stern, but has never since been at Camden. Bourne then owned one quarter, and, together with the owners of two other quarters, resided at Camden. Upon successive changes of owners of those two other quarters, the barque received temporary registers: on the 12th of January 1850, at New Orleans; on the 9th of June 1851, at Rockland, Maine; and on the 9th of December 1851 at Boston; in all of which she was styled as of Camden. On the 18th of September 1855 Bourne executed to the plaintiff, who resides at Providence, R. I., a mortgage of his quarter part of the vessel, which was recorded in the custom house at Belfast, and for breach of condition of which the plaintiff took possession before the defendant's attachment.

The defendant contended that the mortgage to the plaintiff was not recorded in accordance with the U. S. St. of 1850, *c.* 27, § 1, and was therefore void as against the attaching creditor, who had no notice thereof. The judge directed a verdict for the defendant, and the plaintiff alleged exceptions.

*R. H. Dana, Jr.* for the plaintiff. The question is whether, under the U. S. St. of 1850, *c.* 27, requiring all bills of sale, mortgages, hypothecations and conveyances of any vessel, or part of any vessel, to be " recorded in the office of the collector of the customs where such vessel is registered and enrolled," Belfast or Boston was the proper place for recording the mortgage from Bourne to the plaintiff; the one being the place of her domicil and permanent registration, and the other the place of her last temporary register. The policy of the laws of the United States is that each vessel shall have a domicil for the purposes of revenue and of ascertaining title. *St.* 1792, *c.* 39, §§ 3, 11, 12, 1 Sts. at Large, 288, 292, 293. *St.* 1850, *c.* 27, §§ 1–5, 9 Sts. at Large, 440, 441. *Hays* v. *Pacific Mail Steamship*, 17 How. 596. Treasury Regulations of 1857, pp. 1–30. For the purpose of ascertaining titles and recording incumbrances

the balance of convenience and safety is greatly in favor of a rule that the place where the last permanent registration has been made need alone be looked to, rather than of a rule which would require a search for all possible temporary registrations. There is no question that the domicil of this vessel and her proper place of permanent registration were Camden. It will not be pretended that mortgages must be registered anew, under the act of 1850, on changes of domicil; still less on obtaining temporary registers away from home. *Brigham* v. *Weaver*, 6 Cush. 298. The temporary register does not vacate the perma nent register, nor the temporary enrolment the permanent enrolment; but the permanent papers continue in force until the vessel returns to her port of permanent registration, and receives a new register or enrolment. *St.* 1792, *c.* 1, §§ 11. Treasury Regulations of 1857, *c.* 1, §§ 2, 4, 7; § 9, art. 47.

If the mortgage was not legally recorded, it was still valid as between the parties, as at common law; and the plaintiff had the legal title, with the right of possession at all times, which was made absolute by the breach of condition, and his taking possession; after which an attaching creditor of the mortgagor cannot set up want of record of the mortgage.

*P. W. Chandler & G. O. Shattuck*, for the defendant.

BIGELOW, J. We regret that we are called upon in this case to give a construction to an act of congress, in anticipation of any interpretation of its provisions by the supreme court of the United States, whose decision upon it would be paramount and final. But as the rights of the parties to this action depend on the construction of the language of the statute, we cannot avoid the duty of giving our views of its true exposition.

By the first section of the act of congress of 1850, *c.* 27, it is provided that no bill of sale, mortgage, hypothecation or conveyance of any vessel or part of a vessel shall be valid, against any other person than the grantor or mortgagor and persons having actual notice thereof, unless such bill of sale, mortgage, hypothecation or conveyance be recorded in the office of the collector of customs where such vessel is registered and enrolled. 9 U. S. Sts. at Large, 440. The plaintiff claims to hold one

fourth part of the vessel, which is the subject of controversy in the action, under a mortgage from the owner, recorded in the office of the collector of customs of Belfast, in the State of Maine. The defendant, on the other hand, having attached said one fourth on a writ against the mortgagor and owner, insists that the mortgage to the plaintiff is invalid against him, because there is no evidence of any actual notice to him of its existence, and it is not recorded in the office of the collector of the customs where the vessel was registered at the time the mortgage was made, in pursuance of the act of congress above cited. The real and only question at issue therefore is, whether, on the facts stated concerning the enrolment and registry of the vessel, the mortgage should have been recorded at the office of the collector in Belfast, where she was originally enrolled and where her owners at the time of such enrolment resided; or at the office of the collector in Boston, in which she was registered when the mortgage to the plaintiff was executed and delivered. This question can be determined only by referring to the various provisions of the laws of the United States, regulating the enrolment and registry of vessels, with a view to ascertain the place intended to be designated for the record of mortgages and other transfers of vessels by the statute of 1850.

As preliminary to this inquiry, and as essential to ascertain the true answer to be given to it, it is necessary to notice the purpose which congress had in view in enacting the provision requiring such mortgages and transfers to be put on record. Of this there can be no doubt. Its design was the same as that intended to be accomplished by all acts requiring a registry of deeds and other conveyances — to give notice to all persons interested of the true condition of the title, and to prevent innocent parties, like purchasers or creditors, from being injured or defrauded by the existence of prior transfers and incumbrances, of which they had no notice, and could obtain none, when they bought property, advanced money upon it, or gave credit to parties who were in possession and had the nominal title to it. Such being the manifest design of the statute, it is the duty of those who are called on to expound its provisions to give to

them such an interpretation as will more effectually carry out the intention of its framers. Indeed, no other rule of exposition can be safely adopted in construing a statute the terms of which are ambiguously expressed, and are open to two different constructions.

By the act of 1792, *c.* 39, § 3, 1 U. S. Sts. at Large, 287, it is provided that every vessel shall be registered by the collector of the district in which shall be comprehended the port to which she belongs at the time of her registry, which shall be deemed to be the port at or nearest to which the owner, if there be but one, or, if more than one, the husband or managing owner of such vessel usually resides. By § 11 of the same statute it is provided that when any citizen shall purchase or become the owner of any ship or vessel entitled to be registered, she being within a district other than the one in which he resides, she shall be entitled to be registered by the collector of the district where she may happen to be at the time of his becoming owner thereof; it being provided however, that the register thus obtained shall be delivered up to the collector of the district where the ship or vessel belongs, whenever she shall arrive at a port comprehended within such district, and thereupon the collector shall issue a new register in lieu of the one so surrendered. A similar provision is made by § 12, in case of a purchase of a ship or vessel by an agent or attorney acting in behalf of a citizen of the United States. If such ship or vessel is in a district more than fifty miles distant from the one comprehending the port where the vessel ought to be deemed to belong — that is, where her new owner or the ship's husband resides — the collector of the district where the vessel may be is authorized and required to issue a new register, which is to be surrendered in like manner as provided in § 11, when his ship or vessel shall arrive in the port where she belongs, and a new register is to be issued in lieu thereof by the collector of the district in which such port is situated. So by § 13, if the certificate of registry of a ship is lost, mislaid or destroyed, a new one may be issued by the collector of the district where she may first be after such loss or destruction; to be surrendered in like

manner as provided in previous sections, whenever the ship or vessel shall arrive in the port in which she belongs. And by § 14 it is provided that when any registered ship or vessel shall, in whole or in part, be sold or transferred to a citizen of the United States, or shall be altered in form or burden, she shall be registered anew in compliance with the foregoing provisions, that is, in the port where she may be at the time of such sale or alteration. A like provision is made by the U. S. St. of 1803, *c.* 18, § 3, in case of registered ships or vessels sold or transferred to citizens of the United States while without the limits thereof. In those cases, a new register is to be obtained from the collector of the district in which she shall first arrive after such sale or transfer within the limits of the United States. 2 U. S. Sts. at Large, 210.

Provisions of a similar character are made respecting the enrolment of vessels engaged in the coasting trade by the act of 1793, *c.* 46, with the following additional enactments : By §§ 7, 8, it is enacted that collectors may enrol and license any ship or vessel which has been registered, or register any ship or vessel which has been enrolled, on the surrender of the enrolment or license previously granted ; and the exchanges thus authorized may be made by the collector of any district where the ship or vessel may happen to be, with a proviso that such register or enrolment shall be given up to the collector of the district where the ship or vessel belongs within ten days after her arrival in such district. 1 U. S. Sts. at Large, 305.

From these numerous provisions it is apparent that, while every ship or vessel of the United States has a home port, to which she legally belongs, or in which she has a domicil, it by no means follows that she is to be registered and enrolled at all times in the office of the collector of the district within which such home port is comprehended. When she is first built and is to be registered and enrolled in order to receive the document which is to give to her her national character, she is to be registered or enrolled in the district within which the port to which she belongs is included. So if, in the course of her voyages, she has occasion to change such original register or

enrolment, and again arrives at the port of her domicil, such substituted register or enrolment is to be then surrendered and a new one taken out. But in all other cases for which provision is made in the statutes above cited, her register or enrolment is not to be made and issued at such home port or district, but in that one where she may happen to be when, according to the provisions of law, it becomes necessary or expedient to surrender her previous register or enrolment and take out a new one. If, for instance, a ship or vessel, or any part of her, is sold and transferred, a new register or enrolment is to be taken out in the district where she may be at the time of such sale and transfer, and this new register or enrolment continues to be her only register or enrolment until she returns to the district in which the port to which she belongs is comprehended, unless she is previously again sold and transferred, in which case another new register or enrolment is to be taken out in the district where she may happen to be, to be exchanged in like manner when she arrives at the port of her domicil. The result of these provisions, in their practical working, is that a ship or vessel may and often does change her register or enrolment many times in the course of her voyages, and continues to sail for years without returning to the port to which she belongs, and without having a register or enrolment in the district in which such port is comprehended.

The case at bar furnishes a good illustration of the practical operation of the provisions of the statute. The vessel in controversy was originally enrolled in her home port for the coasting trade on the 22d of November 1849. On the 12th of January following, she being then at New Orleans, a register was there taken out. From that date to the time when the vessel was attached by the defendant on the 20th of February 1856, for upwards of six years, she has been registered in various ports; but during all this time she has never returned to Camden, the port to which she is said to belong, and has never been registered in the district within which that port is included.

Under such a system of registration and enrolment it would seem to be reasonable and in many cases necessary that, in

order to accomplish the great purpose which the statute requir-
ing a record of mortgages and other conveyances of ships
or vessels was intended to effect, the place of the record
should be the district where the present existing register or en-
rolment of a ship or vessel is made. In no other way can a
notice to all persons interested be made certain and effectual.
A ship or vessel can have at the same time but one register or
enrolment. It may be called either permanent or temporary ;
but, whatever is its nature, it constitutes for the time being the
only document which gives to the vessel her legal *status* as an
American vessel. The certificate of such registry or enrolment
is not only in the nature of a passport which she always carries
with her to show her national character, but, in a certain sense, it
is also a muniment of title, which, by § 14 of the statute already
cited, is to be inserted at length in any bill of sale of the vessel
or any part of her, in order to entitle a purchaser to a new regis-
ter or enrolment. It is therefore to this document, that pur-
chasers, creditors and other persons interested to inquire into
title would naturally look, as indicating her ownership at the
time it was issued ; and as it would always be readily accessi-
ble, it would afford an easy and certain means of ascertaining
by an official certificate the place to which recourse should be
had, in order to learn whether the ship or vessel is subject to
any mortgage or hypothecation subsequent to its date.

This interpretation of the statute is not only consistent with
its object and meets and satisfies it, so far as it is practicable to
do so ; but it seems to be the only construction which harmon-
izes with the natural and ordinary meaning of its language.
The requisition is, that the record shall be made "where such
vessel is registered and enrolled." It certainly would not be a
compliance with this provision to put a mortgage on record in a
district where a ship or vessel is not and never has been either
registered or enrolled. Yet such would be the result, if the con-
struction of the statute is that such record is to be made in all
cases in the district where the ship or vessel belongs, without
regard to the fact that the registry or certificate of enrolment
in that district may have been long previously surrendered, and

a substituted one taken out in a port where the vessel may have been, in compliance with the provisions of the statute already cited, and that in the mean time she has not returned to her port of domicil. We do not see how this conclusion can be avoided, unless it be said that a vessel may be registered or enrolled in two places at one and the same time. But for such a position we can see no warrant, either in the statute, or in the somewhat loose practice which has grown up under it in the course of nearly seventy years.

The construction for which the plaintiff contends, that the place of record under the statute is in all cases the district where the vessel belongs, is not merely unreasonable and inconsistent with the purpose and language of the statute; but in many cases a compliance with such a requisition would be wholly impracticable, and would make the statute inoperative. As has been already said, the requirement is clear and unequivocal that the record is to be made where the "ship or vessel is registered and enrolled." Now it not unfrequently happens that a ship is not and never has been registered or enrolled in the district to which she by law belongs. This may be so, not temporarily or for a brief time, but continuously and for many years. We have seen that in the case at bar the vessel in controversy had sailed for upwards of six years under a registry granted in another district than that to which she belonged, and although a registered vessel, she had never been registered in her home port.

But a stronger case than this often occurs. Take for example the case of a vessel which, after being built and duly registered or enrolled in the port to which she then belongs, is subsequently sold while in another port, within the limits of another district, to a citizen of the United States, whose residence is not in either of those two districts, but within the limits of a third. In such a case, the requisitions of the statute are clear and imperative, that the vessel is to be registered or enrolled anew in the district where she may happen to be at the time of such sale. She then ceases to have any legal registry or enrolment in the district to which she originally belonged. She has acquired none in the district where her owner or ship's husband

resides, because the statute makes no provision for granting any to her, until she arrives within the limits of such district. The only registry or enrolment she can have is in the district in which she is at the time of her sale and transfer. And such registry or enrolment may continue for a long time to be the only one to which she is entitled. During this period of time where is a mortgage, sale, pledge or hypothecation of such vessel to be recorded? Not in the district to which the vessel belonged before the sale, because she is no longer there legally registered or enrolled; nor in the district within which the new owner or ship's husband resides, because until she arrives there she is not entitled to registry or enrolment in such district. The record in such case can be made only in one place conformably to the statute, and that is in the port or district where she was at the time of the sale and transfer, and in which her new registry or enrolment is by law to be made. Such would be the necessary result in every case where there was a change of ownership of a ship or vessel in a district other than that to which she belonged, or where there was a change of register or enrolment elsewhere than in the home port in any of the cases provided by statute, until the ship or vessel in the course of her voyages should arrive within the limits of the district where the port to which she belonged was situated. This she might not do at all or only after the lapse of many years.

The conclusion seems to be unavoidable, that in a large class of cases the statute, if construed as requiring a record of mortgages or other conveyances in the district to which a vessel belongs, would be wholly ineffectual and inoperative. But no such result would follow if the provision is interpreted as requiring a record where the present existing registry or enrolment of a ship or vessel is made. Such a requisition can at all times be complied with. It is a received and indisputable rule of exposition, that when there are two interpretations of which the language of a statute is susceptible, that one must be adopted which will give full force and effect to its provisions in all cases coming within its purview, to the exclusion of that construction which would render its operation only imperfect and partial.

36 *

Potter *v.* Irish.

These views of the true interpretation of the statute under consideration derive some confirmation from the language used in the third section. It is there provided that the collector, when required, shall furnish any person a certificate of " the material facts of any existing bill of sale, mortgage, hypothecation or other incumbrance upon such vessel, recorded since the issuing of the last register or enrolment." 9 U. S. Sts. at Large, 441. This would seem to imply pretty strongly that the office whence the *last register* or *enrolment* was issued was the place intended for the record of such conveyances. Certainly such a provision would in many cases be inapplicable to the collector of the district where the vessel belonged. He would have no means of knowing when a vessel had last received her register or enrolment, if she had changed it, after leaving her home port, or had never been within the district to which she belonged, after her transfer to her present owners.

It was suggested by the counsel for the plaintiff that a register or enrolment taken out at a place other than in a district where a ship or vessel belonged was only " temporary," and that a " permanent " one could be had only in the port or district where a vessel may be said to be domiciled. We are aware that these words are in practice used in documents of this nature to designate the two kinds of registers or enrolments to which a vessel may be entitled. They were probably adopted as a matter of convenience to distinguish readily between the two, and also to remind the master or owner of the necessity of exchanging them when an exigency contemplated by the statute required it. But these terms are nowhere to be found in the enactments of congress, and as they were well known and in use when the *St.* of 1850, *c.* 27, was passed, it is reasonable to suppose that they would have been incorporated into it if it was intended that its provisions should be in any way affected or controlled by them.

It was also suggested that, as the register or enrolment of a vessel, whenever granted, always contained a statement of the port to which a vessel belonged, there would be no difficulty in ascertaining the place to which a purchaser or other person

interested should look to see whether she was subject to a mort-gage or other incumbrance. But the answer to this suggestion is, that the register or certificate of enrolment does not necessarily indicate the port to which a vessel may belong at any given time. It will show, it is true, where it was at the time it was issued, but not necessarily afterwards. The place of residence of the owners or ship's husband may change subsequently to the time when the register or certificate of enrolment was issued, and thus alter the port to which the vessel would legally belong. But the register or enrolment might still continue the same for a long period — as in the case at bar for upwards of five years — during which it might afford no correct information of the port to which the vessel belonged, or where she would be registered or enrolled, if she had happened to have arrived within its limits.

We are led by these considerations to the conclusion that the mortgage under which the plaintiff claims to hold the vessel was not duly recorded. It was put on record at Belfast, the district within which she belonged, but where she had never been registered, because she had not been within the limits of that district since the time when the register under which she was sailing at the date of the mortgage was issued. It was not put on record at Boston, where her last register was issued, under which she had been sailing for upwards of five years.

No question is made by the counsel for the plaintiff of the validity of the *St.* of 1850, *c.* 27, or the constitutional authority of congress to enact it. He has assumed it to be a valid and binding enactment. Taking it to be so, it follows that the plaintiff cannot claim title under the mortgage; because the act of congress expressly provides that no sale, mortgage, hypothecation or conveyance of a vessel or a part of it shall be yalid against any other person than the grantor or mortgagor and persons having actual notice of it, unless it is recorded in the place designated by the statute.

There was no evidence at the trial of any actual notice to the defendant of the existence of the mortgage; nor are we able to see that there was any evidence on which the jury could have found a verdict in favor of the plaintiff on any of the grounds urged in his behalf. *Exceptions overruled.*