## HITCHINGS v. OLSEN et al.

### (Circuit Court of Appeals, Third Circuit.   January 24, 1911.)

#### No. 1,360.

1. MARITIME LIENS (§ 60*)—STATUTORY LIENS—JURISDICTION TO ENFORCE BY PROCEEDINGS IN REM.

   A lien on a vessel for supplies given by a state statute cannot be enforced by a proceeding in rem in a state court if the vessel is one employed on the navigable waters of the United States, but such proceeding can only be maintained in a court of admiralty.

   [Ed. Note.—For other cases, see Maritime Liens, Cent. Dig. § 98; Dec. Dig. § 60.*

   Maritime liens created by state laws, see note to The Electron, 21 C. C. A. 21.]

2. MARITIME LIENS (§ 24*)—STATUTORY LIENS—NEW JERSEY STATUTE.

   One furnishing coal to a domestic vessel in New Jersey, which is used by the vessel in the ordinary course of her business, is entitled to a lien therefor under the state statute which may be enforced by a court of admiralty, the presumption being that credit was given to the vessel.

   [Ed. Note.—For other cases, see Maritime Liens, Cent. Dig. § 30; Dec. Dig. § 24.*]

3. MARITIME LIENS (§ 38*)—STATUTORY LIENS—EFFECT OF UNRECORDED CONVEYANCE OF VESSEL.

   Under Rev. St. § 4192 (U. S. Comp. St. 1901, p. 2837), which provides that "no bill of sale * * * of any vessel * * * of the United States shall be valid against any person other than the grantor * * * and persons having actual notice thereof unless * * * recorded in the office of the collector of the customs where such vessel is registered or enrolled," a bill of sale of a vessel of New Jersey to a resident of New York not so recorded is invalid to defeat a lien for supplies furnished the vessel in New Jersey, by one having no actual knowledge of the sale, under the New Jersey statute giving a lien on domestic vessels.

   [Ed. Note.—For other cases, see Maritime Liens, Cent. Dig. §§ 71–77; Dec. Dig. § 38.*]

Appeal from the District Court of the United States for the District of New Jersey.

Suit in admiralty by Nelson Olsen and others against the steam tug John T. Pratt and the Keystone Coal & Coke Company against the

---

same. Consolidated causes. From a decree in favor of libelants, Hector M. Hitchings, claimant, appeals. Affirmed.

Hector M. Hitchings, in pro. per.

Edward G. Benedict, for appellees.

Before GRAY, BUFFINGTON, and LANNING, Circuit Judges.

LANNING, Circuit Judge. Nelson Olsen and Clarence H. Downer filed their libel against the steam tug John T. Pratt to enforce their alleged lien for wages. The Keystone Coal & Coke Company filed its libel against the proceeds of the same vessel after it had been sold in the proceedings on the Olsen and Downer libel to enforce its alleged lien for coal furnished to the vessel. Decrees were entered in favor of the libelants. The two causes have been consolidated for the purposes of this appeal, which is brought by Hector M. Hitchings, the claimant.

It appears that the tug before its seizure by the marshal under the Olsen and Downer proceedings had been stripped of a large part of its equipment. The appellant contends that there is nothing due for wages to Olsen and Downer, and also that they aided in fraudulently stripping the tug. The District Court found against the appellant on both these points. Our conclusions, on an independent examination of the evidence, are the same as those of the District Court. The weight of the testimony is clearly in favor of Olsen and Downer as to the amount of wages due to them, and the evidence on which the charge of fraud is based fails utterly to support the charge. The decree entered on the libel of Olsen and Downer will be affirmed, with costs.

The libel of the Keystone Coal & Coke Company averred that the tug was owned by a resident of the state of New Jersey, was a domestic vessel in New Jersey, and that the libelant furnished the tug with coal in that state. The libelant contended in the court below, and has contended in this court, that it has a lien upon the tug under the New Jersey statute, and not under the general maritime law. The present case differs, therefore, from The Alligator, 161 Fed. 37, 88 C. C. A. 201. In that case this court said:

"The allegations of the libel are very meager, and are only such as go to support the assertion of a maritime lien. There is not in them a single statement that would bring the cases within the terms of the state statute. Neither the residence of the libelant, nor the place where the service was performed, is directly or indirectly alleged to be in the state of New Jersey. It may be added that no proof was offered by the libelant as to these matters, though it would have been immaterial if he had done so. Though courts will take judicial notice of state statutes, it is hardly necessary to say that they will not undertake to make rights under such statutes justiciable before them in the absence of the allegata and probata necessary to an issue and controversy in that behalf."

Here, while we do not have the statute of New Jersey expressly pleaded in the libel, we do have facts alleged which, if true, give to the libelant a lien upon the tug under the New Jersey statute. The evidence adduced tends to support such a lien. The New Jersey statute provides that:

"Whenever a debt shall be contracted by the master, owner, agent or consignee of any ship or vessel within this state for either of the following pur-

poses: * * * For such supplies, provisions and stores furnished within this state for the use of such ship or vessel at the time when the same were furnished, * * * such debt shall be a lien upon such ship or vessel, her tackle, apparel and furniture, and continue to be a lien on the same until paid, and shall be preferred to all other liens thereon, except mariner's wages." 2 Gen. St. 1895, p. 1966, § 46.

The lien thus given cannot be enforced by any proceeding in rem in a state court if the vessel be one employed on the navigable waters of the United States. In such a case the enforcement of the lien by a proceeding in rem, though it be given by a state statute only, must be in an admiralty court of the United States. The Roanoke, 189 U. S. 185, 23 Sup. Ct. 491, 47 L. Ed. 770; The Robert W. Parsons, 191 U. S. 17, 24 Sup. Ct. 8, 48 L. Ed. 73. The evidence in the present case amply supports the finding of the court below that the libelant furnished the coal mentioned in the libel at Greenville, N. J., on the order of the master of the vessel, and that the coal was used by the vessel in the usual course of its business. This satisfies the statute, and under the rule applied by this court in The Vigilant, 151 Fed. 747, 81 C. C. A. 371, the libelant has a lien upon the tug, unless, indeed, the statute is inapplicable by reason of the next point to be considered.

On September 15, 1902, Louis Bloodgood sold the tug to George Hagerty, who had the bill of sale for it recorded on the same day in the custom house of New York. On August 8, 1905, George Hagerty entered into an agreement with Abner P. Downer to sell to Downer a half interest in the tug when Downer should pay $2,500 for such interest. This sum seems never to have been paid. On January 5, 1907, however, Abner P. Downer joined George Hagerty in executing a bill of sale for the tug to the appellant Hitchings, a resident of New York, as security for the payment by Hagerty and Downer of one-half of the damages and costs that might be recovered in two certain actions, then pending against Snare & Triest Company, and the fees of Hitchings who had been employed as counsel to defend those actions. On or about March 1, 1907, George Hagerty died. On February 6, 1908, Charles Hagerty, executor of the last will and testament of George Hagerty, without knowledge of the agreement of August 8, 1905, or of the bill of sale of January 5, 1907, which Hitchings had not recorded, executed a bill of sale for the tug to Abner P. Downer, a resident of Hoboken, N. J., which place is within the collection district of the city of New York. The bill of sale was immediately recorded by the collector of the collection district of the city of New York. On November 25, 1908, the Keystone Coal & Coke Company filed its libel against the proceeds of the sale of the tug, which sale had been made by the marshal on August 25, 1908, under the previously filed libel of Nelson Olsen and Clarence H. Downer for coal furnished to the tug in April, May, June, and July, 1908.

The question therefore is whether the bill of sale of January 5, 1907, to Hitchings, was valid as against the Keystone Coal & Coke Company. The court below held it was not. Manifestly that conclusion was correct. The bill of sale of Hitchings was not recorded until September 8, 1908, and Hitchings never had possession of the tug. Section 4192 of the Revised Statutes (U. S. Comp. St. 1901, p. 2837) provides:

"No bill of sale, mortgage, hypothecation or conveyance of any vessel or part of any vessel of the United States shall be valid against any person other than the grantor or mortgagor, his heirs and devisees, and persons having actual notice thereof, unless such bill of sale, mortgage, hypothecation or conveyance is recorded in the office of the collector of the customs where such vessel is registered or enrolled."

It is not pretended that the Keystone Coal & Coke Company had any actual notice of the bill of sale to Hitchings. Whatever right Hitchings may have had as against Abner P. Downer, he cannot enforce his claim to the vessel, or to the proceeds of the sale thereof, as against the lien of the Keystone Coal & Coke Company who furnished the coal before the bill of sale to Hitchings had been recorded, and without knowledge of its existence.

Accordingly the decree entered on the libel of the Keystone Coal & Coke Company is also affirmed, with costs.