———————

## THE JEAN L.

(District Court, S. D. Florida, at Jacksonville. February 19, 1923.)

No. 1321.

1. **Fraudulent conveyances ⊗⟝146(2)—Gifts ⊗⟝44—Retention of possession by donor defeats gift as against bona fide purchasers and creditors.**

Where a husband remained in possession of property after giving it to his wife, his deed or gift to her is void as to subsequent creditors or bona fide purchasers.

2. **Shipping ⊗⟝25—Bill of sale of vessel not recorded in customs office is not notice of title.**

A bill of sale to a boat is not admissible as evidence of title where it was not recorded in the office of the collector of customs, in the home port of the vessel, as required by Rev. St. § 4192 (Comp. St. § 7778), and there was no evidence that the lien claimant had any knowledge of the existence of the bill.

3. **Shipping ⊗⟝25—Record of bill of sale of vessel with state officer is not constructive notice.**

The recording of the bills of sale of a vessel in the office of the clerk of the circuit court of a Florida county does not give constructive notice to a subsequent lien claimant, since the provisions of the United States laws and not of the state apply to transfers of vessels or interests in

———————

⊗⟝For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

them, and especially where there is no state law authorizing bills of sale of personal property to be recorded by that officer.

**4. Maritime liens ⊙⊐65—Evidence held not to show credit was not given on faith of vessel.**

Evidence that the claimant of a lien for repairs to a vessel retained possession of the vessel until he was assured that the money for the repairs was in an office ready for him does not disprove that credit was given to the vessel, and it was unnecessary for the claimant to prove that it was so given under Comp. St. § 7783.

**5. Maritime liens ⊙⊐9—Care of machinery on vessel out of commission in home port is not maritime service.**

The services of one employed to take care of, and clean, the machinery and maintain a general supervision over a vessel lying at her home port out of commission are not maritime, and do not entitle the one rendering the services to a maritime lien upon the vessel therefor.

In Admiralty. Libel by F. R. Priddy against the launch Jean L., in which C. O. Graham intervened, also claiming a lien. Decree rendered for the libelant and intervening libelant.

William J. Barker, of Jacksonville, Fla., for libelant.
Lee Guest, of Jacksonville, Fla., for claimant.
Martin H. Long, of Jacksonville, Fla., for intervener.

CLAYTON, District Judge. [1] The evidence shows without dispute that Priddy, the libelant, made the repairs on the boat under an agreement had with H. J. Williams who was in possession of the vessel, claiming the ownership by purchase from one John E. Breuer, who was at the time the registered owner. The claimant, Jean L. Head, was the former wife of John E. Breuer, and she claims ownership of the boat by gift from her husband, Breuer. It is established and not contradicted that Breuer never surrendered the boat to her, and that while still in such possession he sold the boat to H. J. Williams. For more than six months after the alleged gift of the boat to her, the claimant did not have possession at any time of the boat. It does not appear that she even knew of the whereabouts of the vessel. So, it must be said that, the property having remained in possession of the alleged grantor, the conveyance is inoperative against creditors and a grantee purchasing subsequent to the alleged sale or gift. Here the husband remained in possession of the property conveyed to his wife, and his deed or gift to her is void as to subsequent creditors or bona fide purchasers. Sanders v. Pepoon, 4 Fla. 465; Claflin v. Ambrose, 37 Fla. 78, 19 South. 628.

It is established that at the time Williams brought the boat to Priddy for repairs Williams was in possession and claiming ownership of the boat, acting as owner and captain and exercising other customary acts incident to ownership. He had used the boat in repeated trips and had had repairs made without molestation or objection from the claimant or any one else. There is no evidence to show that Priddy had any knowledge whatever of the claimant's alleged ownership.

[2] The bills of sale to Mrs. Head, the claimant, from Breuer, who was then her husband, are the instruments to show her title. They were objected to as evidence because they were not recorded in the

⊙⊐For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

office of the collector of customs in the home port of the vessel as required by section 4192, vol. 9, Fed. Stat. Ann. (2d Ed.) p. 284 (Comp. St. § 7778), where it is provided that—

"No bill of sale, mortgage, hypothecation or conveyance of any vessel, or part of any vessel, of the United States, shall be valid against any person other than the grantor or mortgagor, his heirs and devisees, and persons having actual notice thereof, unless such bill of sale, mortgage, hypothecation or conveyance is recorded in the office of the collector of the customs where such vessel is registered or enrolled. The lien by bottomry on any vessel, created during her voyage, by a loan of money or materials necessary to repair or enable her to prosecute a voyage shall not, however, lose its priority, or be in any way affected by the provisions of this section."

There is no evidence even tending to show that Priddy, libelant, had any knowledge whatsoever of the existence of the bills of sale or any claim of ownership on the part of the claimant. They were not recorded where the law required so as to constitute constructive notice, and are therefore without validity as against Priddy. Hill v. The Steamer Golden Gate, Fed. Cas. No. 6,492; Hitchings v. Olsen, 184 Fed. 305, 106 C. C. A. 447.

[3] The fact that the claimant recorded the bills of sale in the office of the clerk of the circuit court of Duval county, Fla., could not operate as constructive notice to Priddy for the reason the provisions of the United States Statutes and not the laws of the state apply to transfers of vessels or interest in them. Cunningham v. Tucker, 14 Fla. 251. Furthermore, the federal law requires such instruments to be recorded in the office of the collector of customs, and there is no Florida law authorizing bills of sale of personal property to be recorded by the clerk of the circuit court, which was the case here. Sanders v. Pepoon, 4 Fla. 465; Malsby v. Gamble, 61 Fla. 310, 54 South. 766.

It follows that the claimant's bills of sale were not evidence of any legal title and were, therefore, not admissible as proper testimony in this case.

[4] Some contention is made by the claimant that Priddy did not give credit to the vessel or he would have released it. In regard to this Priddy's uncontradicted testimony on page 5 is quoted:

"Q. Did you voluntarily release possession of the boat, or the custody of the boat to anyone?

"A. Well, I don't know that I did voluntarily, I told them it was strictly a cash job. They (Williams) said Mr. Durrance has got your money, and they took the boat away from the dock, and I went to Mr. Durrance's office, and I have never got all of it yet.

"Q. Who told you that Mr. Durrance had the money for you?

"A. Mr. Williams told me.

"Q. Did you release the boat on the faith or relying on the statement of Mr. Williams that Mr. Durrance had the money in his office ready for you?

"A. I did."

In section 1, Acts Relating to Liens on Vessels for Repairs, etc., 9 Fed. Stat. Ann. 346 (Comp. St. § 7783), express provision is made that it shall not be necessary to allege or prove that credit was given to the vessel. There is no evidence tending to show that the credit was not given to the vessel. Priddy's uncontradicted testimony is that he gave credit to the vessel and that its release was procured by the representa-

tion of Williams that the money due for the repairs was in Durrance's office ready for him, the libelant.

Decree will be entered in favor of libelant for $250, the amount of his claim for repairs, with interest from April 6, 1921.

[5] Considering the intervening libel of C. O. Graham, the testimony shows that he was employed by Williams, who was in possession of the boat at the time. There is no suggestion that there was any evidence to show that Graham had any information which he could have inferred or from which it was his duty to have ascertained that Williams was not the lawful owner of the vessel. According to Graham's testimony, his duties on the boat were to take care of the engine and to keep the boat cleaned up and in shape. His testimony shows that he found the boat near Panama Park and ran it to Hubbard's Dock, where, according to the testimony of the witness Gray, it was received January 28, 1921, and sent on the ways the next day, and remained on the ways until February 11th, and was not released by Hubbard until February 15, 1921. Gray also testified that there was nothing for Graham to do around or about the boat during the period that Hubbard had it; that only at intervals was Graham at the boat during that period, and when there he did not have on working clothes, but seemed to be there merely as a friend of Williams. Further, Gray testified that after Hubbard had finished with the boat on February 15, 1921, and while it was still at the Hubbard Dock, he occasionally saw Graham "tinkering around it."

The evidence does not show that the boat was used between January 15th, and the time it was turned over to Hubbard on January 28th, or that Graham was employed for any particular voyage or trip. If the services of Graham terminated when the work was finished by Hubbard on February 15th, then his services were rendered while the boat was in her home port out of commission, and therefore such services were not maritime. Graham's testimony shows that from January 15th, to February 15th, he slept at home, came to the boat in the morning and left in the evening, thus evidencing that the boat was out of commission and was at her home port during this time. Therefore, if Graham can recover against the boat for his services from February 15th, the time the boat was released from the Hubbard Dock, his services from January 15th to February 15th were not of a maritime nature. The services of one employed to take care of and clean the machinery and maintain a general supervision over a vessel lying at her home port out of commission are not maritime. Williams v. The Sirius (D. C.) 65 Fed. 226. Consequently, from the sum of $312.50 claimed by Graham, the pay for one month from January 15th to February 15th must be deducted. Thus the balance due Graham is ascertained to be $187.50, with interest from April 6, 1921, and that amount will be decreed to him.