## No. 10,714.

### Fort Pitt National Bank vs. Joseph B. Williams.

1. On general principles, attachment gives the creditor no higher or better right to the property attached than the debtor had at the time of the levy; it takes effect only on the debtor's interest and does not *per se* affect the title.

2. *Semble*, that Section 4192 U. S. Revised Statutes, touching the registry of titles to vessels, was designed only to protect persons who have dealt on the faith of the recorded title and as to whom it would operate a fraud to admit unrecorded titles to their detriment; it does not enable mere attaching creditors to oppose equities which are valid against their debtors.

3. The evidence shows that the true equitable title to the property attached was in the firm of L. O. Desforges & Co., and their syndic is entitled to it.

APPEAL from the Civil District Court for the Parish of Orleans. *Monroe, J.*

*Farrar, Jonas & Kruttschnitt* for Plaintiff and Appellant:

1. The petition of Jung, syndic of L. O. Desforges & Co., for the nullity of plaintiff's judgment herein, shows no cause of action; and our exception to it should have been maintained. Plaintiff and defendant have done no act, and entered into no contract open to attack under the insolvent laws of this State.

2. Under the laws of Pennsylvania, fully proved up by the admissions of the parties, every act done and every agreement made between plaintiff and defendant were of unquestionable validity under the law of their common domicile, and are not open to any defence based upon the insolvent laws of the State of Louisiana.

3. Revised Statutes of the United States, Section 4192, is in the following language: "No bill of sale, mortgage, hypothecation, or conveyance of any vessel, or part of any vessel, of the United States, shall be valid against any person other than the grantor or mortgagor, his heirs and devisees, and any person having actual notice thereof, unless such bill of sale, mortgage, hypothecation, or conveyance is recorded in the office of the collector of the customs where such vessel is registered or enrolled. The lien by bottomry on any vessel, created during her voyage, by a loan of money or materials necessary to repair or enable her to prosecute her voyage, shall not, however, lose its priority, or be in any way affected by the provisions of this section."

The unmistakable meaning of this act was enforced by this court in Stark vs. Broom, 9 An. 69.

Its constitutionality is maintained in White's Bank vs. Smith, 7 Wallace, 646. We find no case questioning its clear and unambiguous terms.

4. Upon the facts of this case, fully discussed by us, the firm of L. O. Desforges & Co. has no title whatsoever to any of the property under seizure.

5. Joint ownership in a vessel by co-partners does not necessarily nor usually import co-partnership in the vessel. French vs. Price, 24 Pick. 18; Patterson vs. Chalmers, 7 B. Monroe, 795; Adams vs. Carroll, 85 Pa. State, 209; Nicholls vs. Mumford, 4 Johns. Chancery, 425.

6. The assets of a partnership is susceptible of seizure for the debt of a co-partner. This is shown by the cases of Frost vs. White, 14 An. 140; Taylor vs. Kehlor, 28 An. 530; where the court held that an asset belonging to a foreign firm was liable to seizure for the debt of one of the foreign members at the suit of a domestic creditor.

These cases establish the seizable character of the property. An objection to such seizure is one purely personal to the co-partner who is not sued. If he does not object, no one else can.

*A fortiori* is this the case where the foreign co-partner is himself bound for the same debt, and where the seized property stands in the name of the seized debtor? The equity which alone would authorize such co-partner to interfere disappears, and he has no right to complain.

---

*Bayne, Denégre & Bayne* for the Syndic of Desforges & Co., *contra*:

Section 4192, R. S. of the United States, which is the Act of 1850, is a mere registry Act intended only to protect persons asserting an interest in or claim upon the vessel itself.

Recording Acts relate to conflicting interests and liens, and are designed to regulate the same; they have no other purpose. Mott vs. Ruckman, 3 Blatchford, 74.

It is well settled that registry, so far from being conclusive proof of title, is so little considered that it requires some auxiliary evidence in order to charge, as owner, the party in whose name the vessel is registered.

An equitable title to a vessel may be set up and maintained against an attaching creditor of the registered owner of the legal title thereof, notwithstanding the Act of Congress of 1850, now R. S. 4192.

That Act deals alone with the legal title and does not affect equitable titles. Its purpose was to protect persons dealing on the faith of the recorded instruments of title from being injured by secret transfers or mortgages. It was for the benefit of such only, not for that of trespassers or those who could not be hurt by an unrecorded transfer.

---

*Frank N. Butler* and *W. S. Benedict* on the same side:

1. The E. A. Burke, Maud McLain and Keystone were the property of L. O. Desforges & Co., and, as such, were not susceptible of seizure by any one claiming to be a creditor of a member of that firm. 3 An. 322; 10 An. 756; 13 An. 277.

The *confessions* of judgment having been made by a member of the firm of L. O. Desforges & Co., within three months of the failure of that firm, with the intent unlawfully to favor the Fort Pitt Bank, and the Mechanics' National Bank, to the prejudice of other creditors of said firm, were without any legal effect, and must be declared null and void. R. S., Sec. 1808.

3. The *cessio bonorum* of L. O. Desforges & Co., *ipso facto*, operated a dissolution of the attachments and seizures of the said banks of Pittsburg, and caused the property in controversy to pass to the creditors of said firm unaffected by such seizures; and gave the syndic the right to take immediate possession of the same. R. S., Sec. 1794; 11 La. 530; C. C., Art. 1969 (1964); 12 La. 109; 9 Rob. 32; 4 An. 490; 37 An. 595; 38 An. 439 to 445.

4. The Fort Pitt National Bank, of Pittsburg, and the Mechanics' National Bank, of Pittsburg, foreign creditors, having contracted with L. O. Desforges & Co., domiciled in Louisiana, whilst its insolvency laws were in force, can not claim in the Louisiana State Courts an exemption from the operations of those laws; and an order of a State Court accepting a *cessio bonorum* and staying further proceedings against an insolvent, will arrest the action of such foreign as well as of home creditors.

---

The opinion of the court was delivered by

FENNER, J. The statement of this case, so far as essential for its decision, may be made in very brief and simple terms.

L. O. Desforges & Co. was a commercial firm, engaged in the coal trade, and domiciled and doing business in the City of New Orleans, of which L. O. Desforges, of New Orleans, and Joseph B. Williams, of Pittsburg, Penn., were members.

In February, 1889, the plaintiff bank and the Mechanics' National Bank, of Pittsburg, held a large amount of the unmatured notes of L. O. Desforges & Co., endorsed by the Grand Lake Coal Co. Both the firm of Desforges & Co., and the Grand Lake Coal Co., had failed and gone to protest to the knowledge of the two banks just named.

In this state of facts, Williams executed his individual due-bills in favor of said banks, the sole consideration of which was his liability on the unmature firm notes held by them.

Upon these due-bills the banks immediately instituted attachment suits in the Civil District Court of New Orleans against Williams, under which they attached, as the property of Williams, the "E. A. Burkes," and the barges "Keystone" and "Maud McLain." Williams promptly entered a personal appearance and confessed judgment, upon which confession final judgment was entered with privilege on the property attached, execution was issued and the property was seized under writ of *fieri facias* on March 6, 1889.

On March 8, 1889, the firm of L. O. Desforges & Co., and L. O. Desforges individually, made a cession of property under the State insolvency laws, and filed its schedules, which embraced as assets of the firm the three vessels above mentioned. L. A. Jung was duly appointed provisional syndic in the insolvency, and immediately ap-

plied for and obtained from the court an order of sale of the vessels, which was proceeding to execution when enjoined by the banks.

Agreements were reached by which the sheriff sold all the vessels, and the proceeds were deposited in the judicial depositary to represent the property sold without prejudice to the rights of parties, which are to be the same upon the proceeds as they would have been upon the property if it stood unsold.

The sole contest is between the syndic and the banks as to the disposition of these proceeds.

We accept the statement of the counsel for the banks that the case hinges upon the question of title to the vessels, and his concession that if the vessels belong to the firm of L. O. Desforges & Co., and not to Williams individually, his case is lost.

It is conceded that the proceeds of sale of the " Keystone " were absorbed by admitted liens; so that we have only to consider the titles to the " Burke " and the " McLain."

The " Burke " was purchased from the estate of James B. Eads, and the title stands recorded in the Customhouse in the names of O. L. Desforges and Joseph B. Williams.

The title to the " McLain " stands recorded in the name of Joseph B. Williams.

The syndic claims that although the titles were so made both boats were really bought and paid for by the firm of O. L. Desforges & Co., and, with the full understanding of all parties that they were really the property of said firm.

The banks object to any proof of these allegations on the ground that such equitable title, even if established, can have no effect against them, who are third persons unaffected with notice, and are bound only by the recorded title.

They rely upon Section 4192 of the United States Revised Statutes which provides:

" Sec. 4192. No bill of sale, mortgage, hypothecation or conveyance of any vessel, or part of any vessel of the United States, shall be valid against any person other than the grantor or mortgagor, his heirs and devisees, and persons having actual notice thereof, unless such bill of sale, mortgage, hypothecation or conveyance is recorded in the office of the collector of the customs where such vessel is registered or enrolled."

It is not denied that, as between Williams and the firm, the latter

could set and prove its equitable title although unrecorded, because Williams is necessarily affected with notice.

It is claimed, however, that, as attaching creditors, they have acquired rights superior to those of their debtor, and can maintain his title though he himself could not.

This is contrary to the general principles of attachment, which give to the attaching creditor no higher or better right than his debtor had to the property attached. Oakey vs. R. R. Co., 13 La. 570; Hepp vs. Glover, 15 La. 461; Deloach vs. Jones, 18 La. 447; Frazier vs. Wilcox, 4 Rob. 517.

"It takes effect only on such interest as the debtor has in the property at the time of the levy, and does not *per se* affect the title at all." 1st Am. Encyc. of Law, p. 930.

It is true that under the registry laws of Louisiana, an attacking creditor of the recorded owner of real estate will hold it against any outstanding unrecorded title; but that results from peculiar provisions of our laws.

It may be that a similar interpretation will be given to the statute of the United States regarding the registry of title to vessels; but we are cited to no decision of the Federal Courts going to that extent. On the other hand, we are referred to sundry decisions, Federal and State, which strongly intimate that the object and effect of the statute are simply to protect persons who have dealt on the faith of the recorded title, and as to whom it would be a fraud to give effect to unrecorded titles to their detriment. Richardson vs. Montgomery, 49 Pa. St. 203; White Bank vs. Smith, 7 Wall. 655; Morgan vs. Shinn, 15 Wall. 109; Mott vs. Buckman, 3 Blatch. 75; Bradley vs. Johnston, 41 Maine, 582. The question is not free from doubt, but we are not disposed to give to the statute the sovereign effect claimed· for it. It is, however, a satisfaction to know that, if we have erred in our construction of this Federal statute, the means of correction lie open.

We therefore conclude that the evidence was properly admitted. As to the effect of the evidence, it establishes to our entire satisfaction, as it did to that of the District Judge, that the equitable title to these boats rested in the firm of L. O. Desforges & Co.; that they were bought for the firm use and for the firm account, and paid for with the firm funds; and the attempt of Williams to divert them to the benefit of particular creditors of the firm, under the transparent

pretext of making them his individual creditors by giving his due bill for the unmatured debt due by his firm, and by such collusive attachment proceedings as followed, can not be countenanced.

Judgment affirmed.