Daniel J. GRAEBER, Appellant,

v.

HICKEL INVESTMENT COMPANY, An Alaskan Corporation, and North Country Process, Inc., An Alaskan Corporation, Appellee.

No. S–3500.

Supreme Court of Alaska.

Dec. 21, 1990.

Charles E. Tulin, Anchorage, for appellant.

Donald D. Hopwood and Mary Ellen Flaherty, Kay, Saville, Coffey, Hopwood & Schmid, Anchorage, for appellee.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

OPINION

MOORE, Justice.

This case presents the single, legal question whether under the Ship Mortgage Act an attaching creditor prevails over a purchaser who did not record his interest.[1] Although other courts are divided, the language of the statute is clear, and the arguments for reaching a contrary result are not compelling. We therefore conclude that an attaching creditor does prevail over a prior unrecorded purchaser and affirm the decision of the superior court.

I.

In 1987, Hickel Investment Company ("Hickel") sued David Klosterman to recover rent due under a commercial lease.[2] On February 3, 1988, Hickel received a writ of prejudgment attachment against Klosterman.

On February 11, 1988, Klosterman sold his ship, the *Seawhisper*, to H. Dean Briske for ten dollars "and other valuable considerations." This sale was not recorded in the Coast Guard office in the vessel's home port as required by the Ship Mortgage Act. 46 U.S.C. § 921 (1988). On June 1, 1988, Briske sold the ship to Daniel Graeber for ten dollars "and other valuable

---

1. The Ship Mortgage Act, 46 U.S.C. § 921 (1988) has been repealed. The relevant portion of the new law addressing this issue can be found at 46 U.S.C.A. § 31321 (1990). This case is decided under the former statute.

2. Hickel subsequently prevailed. *Hickel Investment Co. v. Klosterman*, No. 3AN-87–11887 (Alaska Super. July 7, 1989). The case is now before us as S–3560.

considerations." It appears that this sale was not recorded, and as late as February 3, 1989, Klosterman was the record owner of the *Seawhisper.*

On October 12, 1988, Hickel upon motion obtained a modified writ of prejudgment attachment allowing the seizure of a larger amount of Klosterman's property. On October 21, 1988, Hickel seized the *Seawhisper.* It subsequently sank.

Upon learning that Graeber claimed to be the owner of the ship, Hickel commenced this action for a declaration that the sale to Graeber was invalid with respect to Hickel under the Ship Mortgage Act. The superior court granted Hickel summary judgment, and Graeber appealed.

## II.

■■■ This case presents a single, purely legal question. That is, whether an attaching creditor prevails over the unrecorded interests of a prior purchaser of the debtor's vessel. We believe he does.

The Ship Mortgage Act provides:

No sale, conveyance, or mortgage which ... includes a vessel of the United States ... shall be valid ... against any person other than the grantor or mortgagor, his heir or devisee, and a person having actual notice thereof, until such bill of sale, conveyance, or mortgage is recorded in the office of the collector of customs of the port of documentation of such vessel....

46 U.S.C. § 921(a) (1988).[3] Taking this language literally, the answer to the question posed by this case is clear. The sale to Graeber was not recorded; it is thus invalid against Hickel, who was not the seller and did not have actual notice of the sale.[4] Consequently, Hickel properly seized Klosterman's ship and ought to prevail.[5]

The plain language of the statute was sufficient to lead the Ohio Supreme Court and a New York appellate court to conclude that the judgment creditor of a record owner prevails over a prior purchaser who failed to record his interest. Both courts considered this an easy question and the only issue discussed at any length was whether the creditor had actual notice of the sale. *Parker Mills v. Jacot,* 21 N.Y.Super.Ct. (8 Bosw.) 161, 167–68 (1861); *Secrist v. German Ins. Co.,* 19 Ohio St. 476, 482–83 (1869).

Other courts have reached harmonious decisions in cases with somewhat different facts. For example, the Court of Appeals for the Third Circuit held that where a vessel was sold twice to two different parties, a person obtaining a lien on the vessel by providing goods to the second purchaser prevails over the first purchaser when the first purchaser does not record his purchase of the ship. *Hitchings v. Olsen,* 184 F. 305, 307–08 (3d Cir.1911). Similarly, a federal district court held that persons receiving fraudulent mortgages from a record owner with no interest in the property prevail over a prior purchaser who fails to record his ownership. *Marsden v.*

---

**3.** The revised law retains the broad language of the original act:

A bill of sale, conveyance, mortgage, assignment, or related instrument, whenever made, that includes any part of a documented vessel or a vessel for which an application for documentation is filed, must be filed with the Secretary of Transportation to be valid, to the extent the vessel is involved, against any person except—

(A) the grantor, mortgagor, or assignor;

(B) the heir or devisee of the grantor, mortgagor, or assignor; and

(C) a person having actual notice of the sale, conveyance, mortgage, assignment, or related instrument.

46 U.S.C.A. § 31321(a)(1) (1990).

**4.** In his reply brief, Graeber suggests that his "open possession" of the vessel was sufficient to

give Hickel actual notice of the sale. He did not raise this issue before the superior court or in his points on appeal. He has waived the point.

**5.** Graeber argues that even if the transfer was invalid with respect to Hickel, Alaska law does not allow Hickel to attach the ship because it was not "property of [Klosterman]." This argument exploits a minor semantic difference between the Ship Mortgage Act and state attachment law to sidestep federal supremacy. If the sale of the ship was void as to Hickel under federal law, the ship must be "property of [Klosterman]" from Hickel's perspective under state law. *Cf. Brown v. Baker,* 688 P.2d 943, 949 (Alaska 1984) (Ship Mortgage Act preempts state law of security interests where applicable).

*Southern Flight Serv.*, 227 F.Supp. 411, 415, 418–19 (M.D.N.C.1961) (construing similar provision of Civil Aeronautics Act). One court even reached the curious result that a seaman serving on a ship owned by a person whose interest is not recorded may recover damages from the record owner *in personam* because, as to the seaman, the record owner is the owner of the vessel. *Hance v. Antone,* 1 Tex.Civ.Cas. 443 (1881).

Although a literal reading of the statute potentially leads to harsh results in some cases, the equities do not rest entirely with a non-record owner. That person has failed in his or her duty to record his or her interest in the vessel.[6] The vessel recording system works best when interests are either recorded or rendered subordinate. If some non-record owners are allowed to prevail over persons other than their grantors or those with actual notice, those other persons may be injured by their reliance on the erroneous record. For example, Hickel might be liable to Graeber for damages resulting from the sinking of the vessel or for its lost use even though Hickel seized the vessel in reliance on the record of ownership exactly as it should have.

Our literal reading of the Ship Mortgage Act is further supported by other areas of law in which recording statutes provide a uniform and reliable, if at times harsh, system of priorities. These statutes operate on the principle that prior unrecorded interests do not defeat later attaching interests. For example, the Alaska recording laws pertaining to real property void an unrecorded conveyance of real property as against a subsequent bona fide purchaser whose conveyance is first recorded. AS 40.17.080(b). An unrecorded conveyance is valid only as between the parties to the conveyance and those with actual notice of it.

Similarly, the Alaska statutes regarding secured transactions, AS Ch. 45.09, prioritize security interests in personal property by subordinating an unperfected security interest to the rights of persons who become lien creditors before that security interest is perfected. AS 45.09.301(a)(2). "Lien creditors" includes creditors who have acquired a lien on property by attachment or levy. AS 45.09.301(c).

However, we note that courts have been divided on the question at bar. They have taken two slightly different approaches when rejecting a literal reading of the Ship Mortgage Act. Some courts have reasoned that Congress intended the Ship Mortgage Act to protect only purchasers, mortgagees, and lienholders who relied upon the ownership record. They accordingly have read into the Act the general rule that an attaching creditor may not obtain a greater interest in the property attached than that of his debtor. *Fort Pitt Nat'l Bank v. Williams,* 43 La.Ann. 418, 9 So. 117, 118–19 (1891); *cf. Marshall v. Bardin,* 169 Kan. 534, 220 P.2d 187, 190–91 (1950) (construing similar provision of Civil Aeronautics Act). It is true that the Supreme Court has observed that "[t]he Recording Act was passed to furnish information as to title and to protect bona fide purchasers." *James Stewart & Co. v. Rivera,* 274 U.S. 614, 618, 47 S.Ct. 718, 720, 71 L.Ed. 1234 (1927). Although Graeber and a couple of courts have read that statement as unequivocally rejecting the possibility that Congress intended attaching creditors to benefit from the "information as to the title" contained in the registry, we see no evidence of Congressional intent that would support this interpretation and defeat the clear language of the Act.

The Pennsylvania Supreme Court took a somewhat different tack in rejecting a literal interpretation of the Act. *See Richardson v. Montgomery,* 49 Pa. 203, 206–10 (1865). In *Richardson,* a ship's record owner held the ship in trust for two beneficiaries. An attaching creditor of the record owner claimed that he ought to prevail over the beneficiaries because their

---

6. The potential harshness of our literal reading of the Ship Mortgage Act is tempered by the new law, 46 U.S.C. § 31321 (1990). Under this enactment, a transfer is deemed recorded when the new owner has filed the bill of sale with the Secretary of Transportation. If the Secretary cannot document the vessel with the information provided, the owner has ninety days to correct the deficiencies before the filing is terminated. 46 U.S.C.A. § 31321(c) (1990).

equitable interests were not recorded. The court concluded that the Act's sweeping language notwithstanding, it is a fairly conventional recording statute that was not intended to abolish the practice of holding ships in trust or to require recordation of such trusts. Graeber argues that this reasoning implies that, as a mere recording statute, the Act was not intended to upset the preexisting priority of purchasers over the creditors of prior owners. However, even if we assume that *Richardson* is correct that the interests of the beneficiaries of a trust holding a ship need not be recorded, it does not necessarily follow that Graeber ought to prevail over Hickel. Graeber certainly had an equitable interest in the ship. Indeed, but for the Ship Mortgage Act, he would be the legal owner of the ship. However, if *Richardson* were taken too far in such a context, recordation would be meaningless. Taken to an extreme, the court's argument leads to the obviously incorrect result that a non-record owner prevails over a purchaser or mortgagee defrauded by reliance on the record. Thus, applying *Richardson* beyond its narrow factual context requires an interpretation of the Ship Mortgage Act which is inconsistent with its language. In the absence of any specific indication that Congress intended such an interpretation, we reject such a reading of the Act. We therefore AFFIRM the decision of the superior court.