# United States Court of Appeals

## For the First Circuit

---

No. 02-1791

DAVID E. MULLANE; JOAN-LESLIE MULLANE,

Plaintiffs, Appellees/Cross-Appellants,

v.

ADELE CHAMBERS; JEAN FARESE,

Defendants, Appellants/Cross-Appellees,

---

FRANK COUSINS, SHERIFF, ESSEX COUNTY SHERIFF'S DEPARTMENT;
M/Y CENT'ANNI, (O.N. 967917) HER ENGINES, TACKLE,
EQUIPMENT AND FURNISHINGS, IN REM.

Defendants.

---

No. 02-2043

DAVID E. MULLANE; JOAN-LESLIE MULLANE,

Plaintiffs, Appellants,

V.

ADELE CHAMBERS; JEAN FARESE; FRANK COUSINS, SHERIFF, ESSEX
COUNTY SHERIFF'S DEPARTMENT; M/Y CENT'ANNI, (O.N. 967917)
HER ENGINES, TACKLE, EQUIPMENT AND FURNISHINGS, IN REM.

Defendants, Appellees.

---

APPEALS FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Robert E. Keeton, U.S. District Judge]

Before

Lynch, Circuit Judge,
Cyr, Senior Circuit Judge,
and Stahl, Senior Circuit Judge.

———————————

Paul L. Kenny, with whom Salim Rodriguez Tabit and Broadhurst, Lakin & Lakin, were on brief for appellants.
Thomas E. Clinton, with whom Robert E. Collins and Clinton & Muzyka, P.C., were on brief for appellee Mullane.
Robert Ciampitti, Jr., with whom Law Offices of Robert Ciampitti, Jr., P.C., was on brief for appellee Sheriff's Department.

———————————

June 27, 2003

———————————

**STAHL**, **Senior Circuit Judge**.  This case requires us to determine whether an unrecorded bill of sale purporting to convey a federally documented yacht, the M/Y Cent'Anni, is valid as against a judgment creditor and to review an award of $100,000.00 in punitive damages and an assessment of $43,720.44 in attorneys' fees.  We reverse and remand for further proceedings consistent with this opinion.

**I**

On November 24, 1997, Dr. John J. Walsh, Jr. and Beatrice M. Walsh conveyed the vessel, the M/Y Lady B., to David and Angela Murphy, who, on December 8, 1997, documented the conveyance with the Department of Transportation ("DOT") pursuant to the United States Vessel Documentation System, 46 U.S.C. §§ 12101-12124 and 31321 (2002), and changed the vessel's name to "Lady B Gone."  On July 2, 1998, Dr. David Mullane, plaintiff-appellee/cross-appellant, purchased the vessel from the Murphys but failed to record the bill of sale or conveyance with the DOT until September 2, 1998.

In the meantime, Adele Chambers and Jean Farese, defendants-appellants/cross-appellees, sought to levy on the vessel to satisfy two Massachusetts state court writs of execution they held against the Murphys, whom they believed to still own the

vessel.[1]  On August 28, 1998, the Essex County Sheriff's Department ("Sheriff's Department"), defendant-appellee, with the two executions in hand, seized the vessel, which at this point had the name Cent'Anni painted on it, at the Seaport Marina in Lynn, Massachusetts.  The Murphys were on the vessel at the time of the seizure.  When asked by the Sheriff's Department whether they owned the vessel, the Murphys responded that they had conveyed the vessel back to the previous owners, i.e., the Walshes.  The Mullanes were never mentioned.

The Sheriff's Department was accompanied by a member of the United States Coast Guard, who verified that the DOT records showed that Angela and David Murphy were the registered owners.  As we noted, the July 1998 conveyance to the Mullanes (and the change in the vessel's name from Lady B. Gone to Cent'Anni) was not recorded with the DOT until September 2, 1998--five days after the seizure.

On September 4, 1998, the Mullanes filed an amended complaint[2] in admiralty against Chambers, Farese, Sheriff Frank Cousins, the Sheriff's Department, and the Cent'Anni seeking

---

[1]Chambers and Farese each loaned money to David and Angela Murphy and to several trucking companies owned by David Murphy. After the Murphys and the other entities defaulted on the two loans, on November 1, 1996, Farese obtained a money judgment of $27,612.00, and on April 22, 1998, Chambers obtained a money judgment of $70,123.32.

[2]The original complaint was filed on September 1, 1998.

repossession of the vessel and compensatory damages for harm to the vessel allegedly sustained as a result of the seizure. Pursuant to Rules D and E, the Mullanes also filed an emergency motion for immediate arrest of the vessel and a motion to appoint substitute custodian, which the court allowed. The United States Marshals Service arrested the vessel, and after the Mullanes posted security in the amount of $125,000.00, the vessel was released to them. Chambers and Farese filed an answer and counterclaim on October 5, 1998. In their counterclaim, Chambers and Farese sought to have the transfer to the Mullanes set aside as a fraudulent transfer to defraud creditors under the Uniform Fraudulent Transfer Act, Mass. Gen. Laws ch. 109A, §§ 1-12.

On February 29, 2000, Cousins and the Sheriff's Department filed a motion for summary judgment, contending that they had exercised due diligence in determining the record owner of the vessel by relying upon the DOT records and by confirming ownership through the Coast Guard. The Mullanes opposed the motion on the grounds that the arrest was improper under state law and that the Sheriff's Department was liable for the claimed damages to the vessel under a bailment theory. While the motion was under advisement, on March 22, 2000, the Sheriff's Department filed a motion to enter and inspect the vessel, which the court allowed. Claiming that the Mullanes had engaged in bad faith conduct by failing to launch the vessel or provide adequate electrical supply

as required by the March 22 order, on June 1, 2000, the Department filed a motion to bar the Mullanes' claims regarding claimed damages to the mechanical, electrical, and plumbing systems of the vessel. On June 21, the court allowed the motion for summary judgment and the motion to bar such claims. The Sheriff's Department also filed a motion for attorneys' fees, seeking $43,720.44, an amount equal to the all of the Department's litigation expenses accrued up to that point in the case. The court allowed the fee motion on March 9, 2001.

In December 2001, the court conducted a four-day bench trial, and on June 6, 2002, issued an opinion and order and entered final judgment. It determined that the Mullanes were bona fide purchasers of the vessel as of July 2, 1998 and thus took the vessel free of any interests held by Chambers and Farese. The court also found that the vessel was damaged while in the Sheriff's Department's care, but that the Mullanes had failed to prove the amount of damages, and that, in any event, the Sheriff's Department was immune from damages. Finally, the court imposed $100,000.00 in punitive damages against Chambers and Farese, finding that they had intentionally disregarded the Mullanes' rights to the vessel by continuing to assert a claim to the vessel after learning of the Mullanes' unrecorded bill of sale.

Chambers and Farese appeal from the district court's judgment and award of punitive damages, and the Mullanes cross-

appeal from the district court's order of attorneys' fees and costs.[3]

## II

As an initial matter, Chambers and Farese challenge the district court's jurisdiction, which we review de novo. See Bull HN Info. Sys., Inc. v. Hutson, 229 F.3d 321, 328 (1st Cir. 2000). The amended complaint invoked the district court's admiralty jurisdiction pursuant to 28 U.S.C. § 1333(1). Subsection 1333(1), 28 U.S.C. § 1333(1), grants to federal "district courts . . . original jurisdiction, exclusive of the courts of the States, of: (1) Any civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled."[4]  It is beyond dispute that admiralty jurisdiction

---

[3]In their appellate brief, the Mullanes claimed to appeal the district court's rulings in favor of the Sheriff's Department, including its motion for summary judgment and to bar claims.  It appears that we lack jurisdiction to review this claim, as the Mullanes failed to file a timely notice of appeal--the Mullanes filed their notice of appeal on August 16, 2002, seventy-one days after the judgment became final on June 6, 2002. Fed. R. App. P. 4(a)(1) (providing that the notice of appeal must be filed within 30 days after the judgment is entered).  We need not decide this issue since, at oral argument, the Mullanes' counsel made clear that they were not pursuing any claims against Cousins or the Department, but rather were appealing only the district court's award of attorneys' fees.

[4]While the first clause of 1333(1) grants to the district court original subject matter jurisdiction over admiralty and maritime cases, the "saving clause" reserves the right of a common law remedy to be brought in state court or on the law side of the federal district court.  Thus, where there is a remedy available both in admiralty and at common law, a claimant may (1) proceed in admiralty in a federal district court or (2) commence a common law

-7-

extends to possessory and petitory actions. Ward v. Peck, 59 U.S. (18 How.) 267, 267 (1855) ("In this country . . . the ancient jurisdiction over petitory suits or causes of property has been retained [by courts of admiralty]."); Matsuda v. Wada, 128 F. Supp. 2d 659, 669 (D. Haw. 2000) (collecting cases); see also 1 S.F. Friedell, Benedict on Admiralty § 201, at 13-3 (7th ed. 2002). A possessory action is one in which a party seeks to recover possession of a vessel of which she has been wrongfully deprived. Gallagher v. Unenrolled M/V River Queen, 475 F.2d 117, 119 (5th Cir. 1973); Friedell, supra, § 201, at 13-2. A petitory suit, on the other hand, is one to assert legal title to a vessel. Jones v. One Fifty Foot Gulfstar Motor Sailing Yacht, 625 F.2d 44, 47 (5th Cir. 1980); Matsuda, 128 F. Supp. 2d at 669; Friedell, supra, § 201, at 13-1. The procedure to be followed in such cases is set out in Rule D of the Supplemental Rules of the Federal Rules of Civil Procedure, which provides, in relevant part, "In all actions for possession, partition, and to try title . . . with respect to a vessel, . . . the process shall be by a warrant of arrest of the vessel."

Here, the Mullanes asserted legal title and sought immediate repossession of their vessel, which allegedly had been wrongfully taken by Chambers, Farese, and Cousins. And pursuant to

_____

action, either in state court or in a federal district court under diversity. 14A C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure § 3672, at 303-10 (3d ed. 1998) (collecting cases).

Rule D, they successfully moved the district court to arrest the vessel. The district court, therefore, had original subject matter jurisdiction under 28 U.S.C. § 1333(1).

Chambers and Farese rely upon a line of cases holding that actions seeking original possession of the vessel premised upon breach of a purchase agreement for the sale of a vessel fall outside admiralty jurisdiction. See, e.g., Richard Bertram & Co. v. The Yacht, Wanda, 447 F.2d 966, 967 (5th Cir. 1971). Chamber's and Farese's reliance on those cases is misplaced. Those cases stand for the "well established general rule that admiralty will not entertain suits where the substantive rights of the parties flow from a contract to sell or construct a vessel." Jones, 625 F.2d at 47. By contradistinction, the Mullanes had no contractual relationship with Chambers and Farese and alleged that they held legal title to the vessel and sought immediate repossession of and damages for harm caused to their vessel. Cf. id.

Chambers and Farese also contend that the court lacked admiralty jurisdiction because the vessel no longer had status as a "vessel," as it was "out of service" at the Windward Yacht Yard in Newburyport, Massachusetts, and thus "not operating commercially or otherwise on a maritime venture or purpose." Chambers and Farese appear to be invoking the "dead ship doctrine," under which a ship loses its status as a vessel when its "function is so changed that it has no further navigation function." Goodman v.

1973 26 Foot Trojan Vessel, Ark. Registration No. AR1439SN, 859 F.2d 71, 73 (8th Cir. 1988); see also Dluhos v. Floating and Abandoned Vessel, Known as New York, 162 F.3d 63, 71 (2d Cir. 1998). Simply taking a vessel temporarily out of service, however, does not render it a dead ship: as the Supreme Court has instructed, "it is generally accepted that a vessel does not cease to be a vessel when she is not voyaging, but is at anchor, berthed, or at dockside." Chandris, Inc. v. Latsis, 515 U.S. 347, 373 (1995) (internal quotation marks omitted). Chambers and Farese offer no authority for the proposition that the duration and location of the Cent'Anni's storage takes it out of admiralty jurisdiction. In any event, the Sheriff's Department seized the vessel at the Seaport Marina in Lynn, Massachusetts; only later was the vessel moved to Newburyport, where it was temporarily taken out of navigation for security purposes.

## III

We now turn to the merits. First, we address Chambers' and Farese's appeal of the district court's ruling that the Mullanes' unrecorded bill of sale was valid against them. We then turn to their challenge to the award of $100,000.00 in punitive damages. Finally, we address the Mullanes' appeal of the district court's award of $43,720.44 in attorneys' fees.

**A**

Chambers and Farese appeal on the theory that the unrecorded conveyance is invalid as against them under the plain language of 46 U.S.C. § 31321(a)(1).[5] Before determining this issue, however, we first address the Mullanes' claim that the levy was not properly issued under state law.

After finding that the Sheriff's Department was required to comply with Mass. Gen. Laws ch. 223, § 44 (2000)[6] before seizing the vessel, the district court held that the seizure "was contrary to state law" because "[n]o order or affidavit was attached to the execution, nor was any writ of attachment filed with th[e]

---

[5]At oral argument, the Mullanes argued that Chambers and Farese were barred from enforcing their state court judgments by levy of execution and instead were required to file an in rem action in admiralty. This is not the law. A state court can enforce its judgment by levy on a vessel owned by the judgment debtor under the "saving to suitors" clause. Rounds v. Cloverport Foundry & Mach. Co., 237 U.S. 303 (1915); Friedell, supra, § 125, at 8-17; G. Gilmore & C.L. Black, Jr., The Law of Admiralty 38 (2d ed. 1975).

[6]Mass. Gen. Laws ch. 223, § 44 provides in full:

> No ship or vessel shall be attached in a civil action unless the plaintiff or a person on his behalf makes affidavit and proves to the satisfaction of a justice of a court that he has a good claim and reasonable expectation of recovering an amount, exclusive of all costs, equal at least to one-third of the amount of damages claimed, which affidavit shall be annexed to the writ of attachment, and the certificate of the justice that he is satisfied that the same is true shall be annexed to the writ of attachment or endorsed thereon.

[district] court." We disagree. Section 44 simply does not apply to levies of execution: Section 44 applies only to prejudgment attachments. A prejudgment attachment is a process issued by the court before judgment has been rendered, authorizing the seizure of the real and personal property of the defendant to be held as security for any judgment the plaintiff may recover in the action. Such attachments are governed by Mass. Gen. Laws ch. 223, §§ 42-59 and Mass. R. Civ. P. 4.1.

In contrast, a writ of execution is the process by which the judgment creditor satisfies a money judgment against the judgment debtor. Mass. R. Civ. P. 69; Miller v. London, 1 N.E.2d 198, 200 (Mass. 1936). It constitutes a court order to a sheriff or other authorized officer to seize and sell the "property, real or personal, of the debtor, and in some cases in default of property to take the body of the debtor and commit him to jail." Miller, 1 N.E.2d at 200. Executions, in general, are governed by Mass. Gen. Laws ch. 235, §§ 3-23 and Mass. R. Civ. P. 69, and levies of executions on personal property are governed by Mass. Gen. Laws. ch. 235, §§ 28-45. Other than pointing to the requirements of Mass. Gen. Laws. ch. 223, § 44, the Mullanes rely on no other statute or case law, and we found none, that requires the Sheriff's Department to do more than what they did in this case. In short the levy of the vessel was proper, and thus Chambers and Farese perfected their interest in the vessel by

taking possession of it before the Mullanes had recorded their prior purchase agreement.

**B**

This brings us to the central issue of the case: whether the recording statute relating to federally documented vessels, 46 U.S.C. § 31321, renders an unrecorded bill of sale or conveyance invalid as against a seller's judgment creditors who levy the vessel without notice. Subsection 31321(a)(1), 46 U.S.C. § 31321(a)(1), states:

> A bill of sale, conveyance, mortgage, assignment, or related instrument, whenever made, that includes any part of a documented vessel or a vessel for which an application for documentation is filed, must be filed with the Secretary of Transportation to be valid, to the extent the vessel is involved, <u>against any person</u> except–
>
> (A) the grantor, mortgagor, or assignor;
>
> (B) the heir or devisee of the grantor, mortgagor, or assignor; and
>
> (C) <u>a person</u> having actual notice of the sale, conveyance, mortgage, assignment, or related instrument.

(emphasis added). Despite the unambiguous language of the statute, the Mullanes essentially ask that we rewrite it to read, "against any person excluding judgment creditors." Certainly an argument can be made that the drafters intended to protect only subsequent purchasers, mortgagees, and possibly creditors who had something in the nature of a specific lien on the vessel and to exclude other

-13-

general creditors of the vendor, like Chambers and Farese. Nonetheless, strictly as a matter of policy, Congress could have decided also to protect general creditors. See, e.g., Graeber v. Hickel Inv. Co., 803 P.2d 871 (Ala. 1990) (discussing policy reasons for protecting judgment/execution creditors who rely on title records before levying). In fact, as we demonstrate below, Congress has excluded judgment creditors from the protections of other recording statutes. Here, we are faced with plain and unambiguous language that extends the protections of the recording statute to "any person," and like other courts that have considered the issue, we find no extraordinary circumstances sufficient to require us to look beyond its plain meaning. The parties in this controversy failed to brief the issue in any helpful manner: neither brief provides developed argumentation or cites to any case law supporting the respective positions, even though such case law is available and listed in the annotations to the statute. And the subsection is never mentioned in the district court's opinion. In sum, given the plain and unambiguous language of the statute, we hold that the Mullanes' unrecorded bill of sale is invalid against Chambers and Farese unless they had actual notice.

In construing the terms of a statute, we start with the statutory text, according it its ordinary meaning by reference to the "specific context in which that language is used, and the broader context of the statute as a whole." Robinson v. Shell Oil

Co., 519 U.S. 337, 341 (1997); see also In re Bajgar, 104 F.3d 495, 497 (1st Cir. 1997).  When the statutory language is plain and unambiguous, "judicial inquiry is complete, except in rare and exceptional circumstances." Rubin v. United States, 449 U.S. 424, 430 (1981) (internal quotations and citations omitted); see also Barnhart v. Sigmon Coal Co., 534 U.S. 438, 450 (2002); Pritzker v. Yari, 42 F.3d 53, 67-68 (1st Cir. 1994) ("We will not depart from, or otherwise embellish, the language of a statute absent either undeniable textual ambiguity or some other extraordinary consideration, such as the prospect of yielding a patently absurd result.").[7]  This is not one of those cases.

There is nothing ambiguous about the term "any person." Congress chose the broadest possible term to describe the third parties it intended to protect, and did not qualify the term in any way.  The statute as written thus extends protection to any creditors, including judgment creditors like Chambers and Farese, who rely upon the record title of the vessel.  Several state supreme courts have applied the statute accordingly. Graeber v. Hickel Inv. Co., 803 P.2d 871 (Ala. 1990); Benner v. Scandinavian

_____

[7]As instructed by the House Report to the 1998 Act to which subsection 31321(a)(1) was a part, "the literal language of the statute should control the disposition of the cases.  There is no mandate in logic or in case law for reliance on legislative history to reach a result contrary to the plain meaning of the statute, particularly where that plain meaning is in no way unreasonable." H.R. Rep. No. 100-918, at 16 (1988), reprinted in 1988 U.S.C.C.A.N. 6104, 6109.

Am. Bank, 131 P. 1149 (Wash. 1913); Secrist v. German Ins. Co., 19 Ohio St. 476 (1869); Potter v. Irish, 76 Mass. 416 (1858); see also Ellis v. Rickett, 164 N.Y.S. 243 (N.Y. App. Div. 1917) (citing Parker Mills v. Jacot, 21 N.Y. Super. Ct. 161 (1861)); cf. Lewistown Propane Co. v. Ford, 308 Mont. 243, 245-47 (2002) (construing similar provision of Federal Aviation Act as protecting judgment creditors); Bank of Honolulu v. Davids, 709 P.2d 613, 619 (Haw. Ct. App. 1985) (same); Marsden v. S. Flight Serv., 227 F. Supp. 411, 415, 418-19 (M.D.N.C. 1961) (same). These courts reasoned that Congress intended to protect any third party, including attachment or judgment creditors, who relies upon the title records and found no evidence that Congress intended to exclude any class of persons from the term "any person." Neither have we.

This reading of the subsection is reinforced when considering its remarkable breadth when compared with the language Congress has used in other recording statutes. See, e.g., 7 U.S.C. § 2531(d) ("[C]onveyance . . . shall be void as against any subsequent purchaser or mortgagee for a valuable consideration, without notice, unless it . . . is filed for recording in the Plant Variety Protection Office . . . .") (emphasis added); 17 U.S.C. § 1320(d) ("[C]onveyance . . . shall be void as against any subsequent purchaser or mortgagee for a valuable consideration, unless it is recorded in the Office of the Administrator . . . .")

-16-

(emphasis added); 35 U.S.C. § 261 ("[C]onveyance shall be void as against <u>any subsequent purchaser or mortgagee for a valuable consideration</u>, without notice, unless it is recorded in the Patent and Trademark Office . . . ."). If Congress meant to exclude a particular class of persons from the protection of § 31321(a)(1), it certainly knew how and could have done so clearly and explicitly.

Our acceptance of the term "any person" at face value is further buttressed by the overall purpose of the subsection. The language of subsection 31321(a)(1), like that of other recording statutes, reveals a legislative intent to protect third parties who rely upon the title records of the vessel. Like other creditors, judgment creditors rely upon these documents at expense and risk. If a wrongful levy is made on a vessel, which is then sold at a sheriff's sale, they could be held liable for trespass, conversion, and damages, and would be responsible for their own legal fees in defending the levy against unrecorded interests. This case presents an apt illustration. In addition to being responsible for their own legal fees in defending the levy, Chambers and Farese were held responsible for $100,000.00 in punitive damages for pressing their claim to the vessel. Furthermore, as a unanimous Alaska Supreme Court reasoned, an attaching or judgment creditor could "be injured by their reliance on the erroneous [title] record[: the creditor] might be liable to [the holder of the

-17-

unrecorded bill of sale] for damages resulting from the sinking of the vessel or for its lost use even though [the creditor] seized the vessel in reliance on the record of ownership exactly as it should have."  Graeber, 803 P.2d at 873.

It is also worth noting that, despite the case law extending protection to attachment and judgment creditors and the use of more specific terms in other recording statutes, see, e.g., 35 U.S.C. § 261 ("[C]onveyance shall be void as against any subsequent purchaser or mortgagee for a valuable consideration, without notice, unless it is recorded . . . ."), Congress has twice reenacted the recording statute and retained the term "any person" to describe the third parties it intended to protect.[8]

We recognize that two state courts have reached a different conclusion, holding that the statute was intended to protect only subsequent purchasers and mortgagees.  These courts relied on the general common law rule that the rights of an attaching or judgment creditor are no greater than those held by the debtor; in other words, the creditor's rights are limited to

_____

[8]The recording statute traces its roots back to the Vessel Sales and Mortgage Recording Act of July 29, 1850, ch. 27, § 1, 9 Stat. 440.  The Act of 1850 was passed, in part, to establish a federal clearing house of recorded instruments affecting title to federally documented vessels so that third parties had one place to look to for reliable information as to what claims, liens, or other encumbrances exist against the vessel. White's Bank v. Smith, 74 U.S. (7 Wall.) 646, 651 (1868).  The recording statute was reenacted in 1920, Ship Mortgage Act of 1920, ch. 250, § 30, 41 Stat. 1000, and again in 1988, Pub. L. No. 100-710, 102 Stat. 4741, virtually unchanged from its original form.

-18-

the debtor's actual title in the property.  Fort Pitt Nat'l Bank v. Williams, 9 So. 117, 118-19 (La. 1891); Richardson v. Montgomery, 49 Pa. 203, 206-10 (1865).  The Williams court further reasoned that the vessel recording statute was passed "simply to protect persons who have dealt on the faith of the recorded title, and as to whom it would be fraud to give effect to unrecorded titles to their detriment," a group which would not include judgment creditors.  9 So. at 119.

Simply relying upon the common law principle of "first in time, first in right" is unpersuasive.  At common law, without the benefit of recording statutes, this same principle applied to subsequent purchasers and mortgagees.  5 H.T. Tiffany & B. Jones, Tiffany Real Prop. Ch. 34, § 1257 (2002).  If A conveyed property to B and then made an identical conveyance to C, B prevailed over C on the theory that A no longer had any interest to convey. Taking the argument to its logical terminus then would lead to the unpalatable result that subsequent purchasers would not be protected by the vessel statute on the ground that when they purchased the vessel, the vendor no longer had an interest to sell. But the recording act changed this result.  Moreover, while it is ordinarily true that the rights of an attaching or judgment creditor do not have priority over a prior unrecorded conveyance, many states have abrogated this principle by protecting creditor's rights through a recording statute.  See, e.g., Muller v.

-19-

Waldschmidt, 185 B.R. 522, 554-55 (Bankr. M.D. Tenn. 1995) (construing Tenn. Code Ann. § 66-26-103 as protecting judgment creditors); Whitaker v. Hill, 179 S.W. 539 (Tex. App. 1915) (holding that former version of Tex. Property Code Ann. § 13.001 changed the common law rule by protecting execution creditors); see also Sky Harbor, Inc. v. Jenner, 435 P.2d 894, 896-97 (Colo. 1968); Hillside Coop. Bank v. Cavanaugh, 122 N.E. 187, 189 (Mass. 1919); Blum v. Schwartz, 20 S.W. 54, 55-56 (Tex. 1892); Hitz v. Nat'l Metro. Bank, 111 U.S. 722, 728 (1884). And to say that judgment creditors who rely "on the faith of the recorded title" when levying their execution do not do so "to their detriment" is baseless. As we said, judgment creditors may rely upon title records at the risk of being held liable for trespass, conversion, and any damage sustained to the vessel during a wrongful levy.

Most important, these courts point to no textual basis for saying that subsection 31321(a)(1) applies to purchasers and mortgagees alone. Certainly Congress is not required to list every "person" it had in mind when it says that it is protecting "any person." In short, without some indication from Congress that it intended to exclude judgment creditors, we will not engraft such a policy limitation on the statute. As instructed by the Supreme Court, "courts must presume that a legislature says in a statute what it means and means in a statute what it says there. When the words of a statute are unambiguous, then, this first canon is also

-20-

the last: 'judicial inquiry is complete.'" <u>Conn. Nat'l Bank</u> v. <u>Germain</u>, 503 U.S. 249, 253-54 (1992) (quoting <u>Rubin</u>, 449 U.S. at 430). Because subsection 31321(a)(1) is explicit as to whom it protects, our inquiry is at an end.[9]

Chambers and Farese are not yet out of the deep, however. The recording statute protects only those persons having no actual notice of the unrecorded conveyance at the time their interests attached. 42 U.S.C. § 31321(a)(1)(C). The district court found that Chambers and Farese had notice of the unrecorded conveyance either at the time of the seizure or soon thereafter. The crucial question, however, is whether they had actual notice either before or at the time of the levy. It is not sufficient that they learned of the unrecorded conveyance after they levied upon the vessel. Because the district court did not apply subsection 31321(a)(1) and did not make a factual finding as to whether Chambers and Farese had actual notice at the time of the levy, we remand the case for further proceedings consistent with this opinion. If Chambers and Farese did not have actual notice, then the Mullanes' complaint against them should be dismissed, and their seizure of the vessel was valid to enforce a judgment debt against the Murphys. Because the vessel has now been released

---

[9]We recognize that in many instances, recording statutes like this one prove to be a harsh reality for purchasers like the Mullanes, but the Mullanes had a means to protect their interests: they could have filed their bill of sale with the Secretary pursuant to subsection 31321(1)(1). This they failed to do.

-21-

under what would in those circumstances be an erroneous order, we leave it to the district court on remand to sort through the remaining issues.

We make one final note. If the district court finds that Chambers and Farese had actual notice of the transfer, there remains the issue of whether the transfer was fraudulent as defined by section 5 of the Uniform Fraudulent Transfer Act, Mass. Gen. Laws. ch. 109A, § 5, which would allow Chambers and Farese to avoid it under Mass. Gen. Laws. ch. 109A, § 8. Despite being raised in Chambers' and Farese's counterclaim, the district court never cited to or analyzed Chapter 109A, presumably because of its holding that the validity of the transfer was governed by federal law, not state law. See Mullane, 206 F. Supp. 2d at 109-10. However, we agree with Chambers and Farese that state law governs the validity of the transfer and that the district court should have considered whether the transfer was avoidable under Mass. Gen. Laws. ch. 109A, § 8, and/or whether the Mullanes had any defenses under Mass. Gen. Laws. ch. 109A, § 9. See Chase Manhattan Fin. Servs. v. McMillian, 896 F.2d 452, 460 (10th Cir. 1990) (holding that state law, not admiralty, governs the validity of transfers of title); St. Paul Fire & Marine Ins. Co. v. Vest Transp. Co., 666 F.2d 932, 938 (5th Cir. 1982); Jones, 625 F.2d at 47-49 (applying Florida law to determine title); S.C. Loveland, Inc. v. East West Towing, Inc., 608 F.2d 160, 164 (5th Cir. 1979); Gilmore & Black, supra, at 26 &

n.90 (noting that contracts for the sale of a vessel are non-maritime); cf. Stewart & Co. v. Rivara, 274 U.S. 614, 618 (1927).

We recognize that Mass. Gen. Laws ch. 109A, §9 provides several defenses to "a person who took in good-faith," which vary depending on whether the person had paid "reasonably equivalent value" for the property, and that the district court found that Dr. Mullane was a bona fide purchaser for value without notice of any adverse claims to the vessel and thus concluded that whether the underlying transaction was fraudulent was immaterial. In making this ruling, however, the court failed to consider the specific sections of or the case law interpreting Chapter 109A and instead patched together definitions and elements from the Massachusetts Uniform Commercial Code in determining whether a defense to a fraudulent transfer existed. It also made its ruling without ever determining whether the underlying transfer to Mullane was fraudulent under Mass. Gen. Laws. ch. 109A, § 5. We cannot say from the district court's opinion whether its use of a hodgepodge of definitions and standards and its failure to make an initial determination of whether the transfer was, in fact, fraudulent made any difference in this case. We believe that it is in the interests of all concerned to have the entire fraudulent transfer claim decided by the district court in the first instance. We therefore vacate the district court's ruling on this issue and

-23-

remand the case to the district court so that it may ascertain whether the sale was a fraudulent transfer.

### C

Chambers and Farese also appeal the district court's award of $100,000.00 in punitive damages. Even though the plaintiffs did not seek punitive damages, the court sua sponte awarded them, reasoning that

> defendants' conduct in this case constituted an intentional and conscious disregard for the rights of plaintiffs. When the defendants had the vessel seized they were either aware, or soon became aware, that [Murphy] had sold his ownership interest in the vessel to Dr. Mullane. They nevertheless continued to assert a right to the vessel in satisfaction of David Murphy's debt, and by that course of action deprived Dr. Mullane of his rights with respect to possession and use of the vessel.

Mullane v. Chambers, 206 F. Supp. 2d 105, 119 (D. Mass. 2002). Essentially, the court awarded punitive damages merely because Chambers and Farese continued to assert their legal claims to the vessel after the Mullanes finally presented their bill of sale. Given our holding above, there is no longer a basis for the award. But it is important to note that we would have reversed even if we had found in favor of the Mullanes. It is true that punitive damages are available in admiralty "where defendant's intentional or wanton and reckless conduct amounted to a conscious disregard of the rights of others." CEH, Inc. v. F/V Seafarer, 70 F.3d 694, 699 (1st Cir. 1995) (collecting cases). However, it is equally true

-24-

that punitive damages are "rarely imposed." Id. It should go without saying that simply presenting a defense in a lawsuit is not the type of conduct that warrants punitive damages. This was not a case by the Mullanes of abuse of process or malicious prosecution, nor was there any finding of a violation of Rule 11 of the Federal Rules of Civil Procedure. Tellingly, at oral argument the Mullanes agreed that there was nothing in the record to support punitive damages and that they could not defend such an award. Thus, we reverse the award of $100,000.00 in punitive damages.

**D**

Finally, we turn to the Mullanes' appeal of the district court's award of attorneys' fees to the Sheriff's Department.[10] There is a nagging issue of jurisdiction since the Mullanes filed their notice of appeal more than thirty days after the June 6 final judgment was entered. Fed. R. App. P. 4(a)(1) (providing that notice of appeal must be filed within 30 days after the judgment or order has been entered); id. 4(a)(7) ("A judgment or order is entered for purposes of this Rule 4(a) when it is entered in compliance with Rules 58 and 79(a) of the Federal Rules of Civil Procedure.").[11]

---

[10]Chambers and Farese raise other sundry arguments and challenges. We have considered them and find that they are without merit and not deserving discussion.

[11]Rule 4(a)(7) was amended in 2000 to read,

We think it helpful to sketch the procedural background. After the district court granted the Sheriff's Department motion to bar claims concerning damages to the mechanical, electrical, and plumbing systems on the ground that the Mullanes had engaged in bad faith conduct to prevent the Sheriff's Department from mounting a defense, the Department filed a motion for attorneys' fees under Rule 54(d)(2) of the Federal Rules of Civil Procedure, invoking the court's inherent powers to sanction the Mullanes. On March 9, 2001, the court issued an opinion and order, in which it awarded attorneys' fees, made a presumptive finding that a reasonable fee award was $43,720.44 (the amount of the entire litigation up to

> (A) A judgment or order is entered for purposes of this Rule 4(a):
>
> (i) if Federal Rule of Civil Procedure 58(a)(1) does not require a separate document, when the judgment or order is entered in the civil docket under Federal Rule of Civil Procedure 79(a); or
>
> (ii) if Federal Rule of Civil Procedure 58(a)(1) requires a separate document, when the judgment or order is entered in the civil docket under Federal Rule of Civil Procedure 79(a) and when the earlier of these events occurs:
>
> • the judgment or order is set forth on a separate document, or
>
> • 150 days have run from entry of the judgment or order in the civil docket under Federal Rule of Civil Procedure 79(a).

The amendments became effective December 1, 2002 and thus have no bearing on this appeal.

that point), and allowed each party five weeks to file a motion for a modification. The order also provided that if no party filed such a motion, the clerk was "authorized to make an Order awarding attorneys' fees in the amount of the court's presumptive finding, together with taxable costs." The court's opinion and order were entered on the docket on March 9. On April 17, 2001, the Mullanes filed a motion to modify, which the court denied at a case management conference on July 31, 2001. Although the clerk made a notation of the court's denial on the docket, it did not issue a separate order or judgment.

On the first day of trial, on December 11, 2001, the Sheriff's Department filed a motion for final judgment as to less than all parties under Fed. R. Civ. P. 54(b) on the order granting its motions for summary judgment, to bar claims, and for attorneys' fees. The Mullanes filed an opposition. Finally, on June 6, 2002, the court issued an opinion and order, in which it, among other things, ordered the Sheriff's Department's Rule 54(b) motion to be dismissed as moot and ordered the clerk to enter a final judgment on a separate document as follows: "For the reasons explained in the Opinion and Order of June 6, 2002, it is ORDERED, Plaintiffs are hereby declared and adjudged to be the true owners of the Motorized Yacht Cent'Anni. Judgment for the plaintiffs in the amount of $100,000.00, plus costs." The clerk entered the final judgment accordingly on June 6.

-27-

On July 18, 2002, after the time for filing a notice of appeal had expired, the Mullanes filed a motion requesting a separate entry of judgment on the orders granting the Sheriff's Department motions for summary judgment and for attorneys' fees, or, in the alternative, for leave to file a notice of appeal late. In a memorandum and order issued on August 6, 2002, the court denied the motion. According to the court, taking together the orders of June 21, 2000 (allowing in part motion for summary judgment), March 9, 2001 (allowing motion for attorneys' fees), and June 6 (ruling in favor of the Sheriff's Department on immunity grounds), established that the Mullanes "won nothing . . . against the [Sheriff's Department] and that the [Sheriff's Department] won attorneys' fees of $43,720.44." The court concluded that "[w]hen the Final Judgment of June 6, 2002 closed the case, the previous interlocutory orders in favor of the sheriff in some respects and against him in other became final because the case was declared closed by a Final Judgment." We disagree.

Our starting point is Rule 54(d). Rule 54(d)(A) provides, in part, that upon granting a motion for attorneys' fees, "[t]he court shall find the facts and state its conclusions of law as provided in Rule 52(a), and a judgment shall be set forth in a separate document as provided in Rule 58." Fed. R. Civ. P.

54(d)(2)(C) (emphasis added). Former Rule 58[12] required that "[e]very judgment . . . be set forth on a separate document" and provided that a "judgment is effective only when so set forth and when entered as provided in Rule 79(a)." The time then for filing a notice of appeal on the order awarding attorneys' fees did not start to run unless and until a separate judgment was entered. See, e.g., Green v. Nevers, 196 F.3d 627, 630-31 (6th Cir. 1999).

Although Rule 58 does not require that a separate judgment use any particular words or form of words, nonetheless, we interpret Rule 58 fairly strictly; as the Supreme Court has instructed, Rule 58 "must be mechanically applied to avoid new uncertainties as to the date on which a judgment is entered." United States v. Indrelunas, 411 U.S. 216, 222 (1973). In general, the judgment should be self-sufficient, complete, and describe the parties and the relief to which the party is entitled. Willhauck v. Halpin, 919 F.2d 788, 792-794 (1st Cir. 1990); Reytblatt v. Denton, 812 F.2d 1042, 1043-44 (7th Cir. 1987) (collecting cases); Claybrook Drilling Co. v. Divanco, Inc., 336 F.2d 697, 699 (10th Cir. 1964); 11 C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure § 2785, at 22 (2d ed. 1995) ("[T]he separate judgment

---

[12]Rule 58 was amended in 2002 to read, in relevant part, "Every judgment and amended judgment must be set forth on a separate document, but a separate document is not required for an order disposing of a motion: . . . (C) for attorney fees under Rule 54." The 2000 amendments became effective December 1, 2002 and thus are not relevant to our decision.

. . . should be self-sufficient and should not merely incorporate other documents by reference . . . .").

In its order denying the Mullanes' motion for entry of judgment on a separate document, the district court seemed to say that the June 6 Final Judgment was such a document.  We agree that it is the only relevant document, as the court's March 9, 2001, conditional order allowing fees and the clerk's notation regarding the court's denial of the motion to modify clearly do not suffice for Rule 58 purposes.  See Domegan v. Ponte, 972 F.2d 401, 405 (1st Cir. 1992) (noting that separate judgment must be separate and distinct from any opinion or memorandum); accord Green, 196 F.3d at 630 (same and noting that "a docket entry is not sufficient.").  We hold that the June 6 Final Judgment was insufficient to serve as a separate judgment on the award of attorneys' fees: the Final Judgment simply failed to make any mention of the award.  We recognize that courts have been willing to accept judgments as sufficient for Rule 58 purposes where they incorporate by reference the underlying opinion or order.  11 Wright, Miller & Cooper, supra, § 2785, 22-23 (collecting cases but observing that this is "inconsistent with the Supreme Court's . . . pronouncement that the separate document requirement of Rule 58 is to be 'mechanically applied'").  However, this does not change the result in this case. In the June 6 opinion and order, after acknowledging that it had issued interlocutory orders (1) allowing in part the Sheriff's

Department's motion for summary judgment and (2) the motion to bar claims, the court stated that those rulings did not dispose of all claims against the Department, and went on to hold that the Department's seizure of the vessel violated state law but that it was immune from damages. In no place in the opinion did the court discuss the award of attorneys' fees or intimate that such fees had ever been awarded. It was simply silent on the issue.

Because no separate judgment has been "entered" under Rule 58, the time for filing a notice of appeal has not yet begun to run. See Fed. R. App. P. 4(a)(7) (providing that a judgment or order is "entered . . . when it is entered in compliance with Rules 58"). Given that the district court treated the order allowing attorneys' fees as an appealable order and that the parties do not object to treating it as such, we find no reason to remand for formal compliance with Rule 58. Domegan, 972 F.2d 401 (holding that court had jurisdiction where no separate judgment had been entered, even though notice of appeal was not timely filed as measured from the final decision), vacated on other grounds, 507 U.S. 956 (1993); see also Green, 196 F.3d at 631 (finding timely appeal, even though notice of appeal was filed 33 days after the entry of the appealable order); M. Zachary, Rules 58 and 79(a) of the Federal Rules of Civil Procedure: Appellate Jurisdiction and the Separate Judgment and Docket Entry Requirements, 40 N.Y.L. Sch. L. Rev. 409, 426 (1996); but see Fiore v. Washington Cty. Cmty.

-31-

Mental Health Center, 960 F.2d 229, 236 (1st Cir. 1992) (en banc) (noting that a party can waive separate judgment requirement where the party fails to act within three months). Therefore, the Mullanes' appeal is timely and we have jurisdiction. We now proceed to the merits.

Under the well-established "American Rule," attorneys' fees are not recoverable by a party unless statutorily or contractually authorized. However, a court possesses inherent equitable powers to award attorneys' fees against a party that "has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" Whitney Bros. Co. v. Sprafkin, 60 F.3d 8, 13 (1st Cir. 1995) (quoting Chambers v. NASCO, Inc., 501 U.S. 32, 45-46 (1991)). We review such awards for abuse of discretion, Chambers, 501 U.S. at 55, and recognize that district courts are given broad deference in order to "streamline the litigation process by freeing the appellate courts from the duty of reweighing evidence . . . already weighed and considered by the district court," Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 404 (1990)). Nevertheless, "[b]ecause of their very potency, inherent powers must be exercised with restraint and discretion," Chambers, 501 U.S. at 44 (citation omitted), and thus "'should be used sparingly and reserved for egregious circumstances,'" Whitney Bros. Co., 60 F.3d at 13 (quoting Jones v. Winnepesaukee Realty, 990 F.2d 1, 4 (1st Cir. 1993)). We, therefore, require that a district court "describe the

-32-

bad faith conduct with 'sufficient specificity,' accompanied by a 'detailed explanation of the reasons justifying the award.'" Id. (quoting Gradmann & Holler v. Cont'l, 679 F.2d 272, 274 (1st Cir. 1982)).

Here, the district court provided conclusory statements, without specificity, in support of awarding attorneys' fees:

> On the record before me, I find that the combined conduct of plaintiffs and their attorneys egregiously increased the contentiousness of communications bearing on disclosure, discovery, and delay, and resulted in needless and unreasonable added burdens of expense, delay, and increased hours of attorney time in the representation of defendant Cousins and others acting for him or in association with him.
>
> In these circumstances I make a presumptive finding, on the record before me, that an award of $43,720.44, as proposed in Docket No. 23, at page 10, is reasonable. A reasonable time will be allowed, in the order below, to challenge this presumptive finding.

This is not sufficient for meaningful appellate review, as it makes no attempt to describe "the bad faith conduct with sufficient specificity," or to provide a "detailed explanation of the reasons justifying the award." Whitney Bros. Co., 60 F.3d at 13 (internal quotation marks and citation omitted). Although there may be circumstances where we would vacate an award and remand to the district court for a fuller explanation for the award, this case does not warrant such proceedings. As support for attorneys' fees, the Sheriff's Department relies solely on the Mullanes' alleged

-33-

failure to comply with the district court's March 22, 2000 order, in which the district court ordered the Mullanes to put the vessel in the water and to provide an adequate electrical supply. When the Sheriff's Department arrived to inspect the vessel on May 26, 2000, it remained dry-docked and without an adequate electrical supply. The Sheriff's Department points to no other actions on the part of the Mullanes or their attorneys that are relevant to the award. While the Mullanes' and their attorneys' failure to abide by the district court's March 22 order might have been grounds for discovery sanctions, including attorneys' fees caused by the failure, we think it insufficient alone to support a finding that the Mullanes or their attorneys "'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" Whitney Bros. Co. v. Sprafkin, 60 F.3d 8, 13 (1st Cir. 1995) (quoting Chambers v. NASCO, Inc., 501 U.S. 32, 45-46 (1991)). We, therefore, vacate the entirety of the attorneys' fees award.

**IV**

For the foregoing reasons, we REVERSE and REMAND the district court's decision in favor of the Mullanes for further proceedings consistent with this opinion, REVERSE the district court's award of $100,000 in punitive damages, and REVERSE the district court's award of attorneys' fees.